# EMPLOYERS MUTUAL LIABILITY INSURANCE COMPANY OF WISCONSIN v. QUEEN CITY BOTTLING COMPANY.[1]

December 2, 1927.

No. 26,230.

**Larger recovery by plaintiff not warranted by evidence.**

The evidence *held* too indefinite and uncertain to call for a finding that a greater sum is due plaintiff than that determined by the trial court.

Liability Insurance, 36 C. J. p. 1068 n. 16.

Plaintiff appealed from an order of the district court for Polk county, Watts, J. denying its motion for a new trial. Affirmed.

*Alexander Fosmark* and *Lewis Severance,* for appellant.

*O'Brien & Sylvestre,* for respondent.

Holt, J.

Plaintiff, an insurance company, insured the risks of employers under the workmen's compensation act, L. 1921, p. 90, c. 82. Its policy was issued to defendant December 4, 1921. The relation of insurer and insured ended November 1, 1923. This action was to recover unpaid premiums, claimed to be $215.15. Findings were made awarding only $71.69, and plaintiff appeals from the order denying a new trial.

The record does not furnish data from which this court could determine the amount due, even applying the rates contended for by plaintiff. The books of defendant were not introduced. The bookkeeper was called and testified to the total payroll for each month but not as to the amount paid for the various classes of work. The rate of the premium of the different classes varied from seven cents to $4.74 per $100 of salary, and as to some classes no rate is given in the policy. The only other testimony came from plaintiff's auditor who had audited defendant's payroll. There were discrepancies

[1]Reported in 216 N. W. 539.

between his figures and the total payroll as given by the book-keeper. Not much reliance can be placed upon plaintiff's so-called audits. There appear to have been several before suit was brought, upon two of which demands or bills were presented, one in January, 1924, and the other in June, 1924, eight months after the last policy was canceled. Neither bill agrees with the other, nor with the present demands, the variations being $108, $145, and $215.15. However the real grievance of appellant is now that the learned trial court refused to classify the president and manager of defendant as a bottler. It is conceded that Joseph Becker, the secretary and outside salesman, took a very low rate, 14 cents per $100 of salary, and that Frank Pratz, the vice-president and the only steady bottler, took the high rate of $4.74 per $100 of salary. Defendant was doing a small business. More than one-half of the payroll was for the salaries of the three officers mentioned, the salary of the president and secretary being $100 each per month and that of the vice-president $110 per month.

William Becker, the president, was the manager. He attended to the business matters, made collections, and solicited the local trade. He was in the office but occasionally did some bottling, washed bottles, or took a hand at anything that was necessary to be done, including the work of janitor. The rates and classification of risks of the policy purport to be fixed in accordance with the directions of L. 1921, p. 132, c. 85, and in so far as the Minnesota compensation manual, adopted by the bureau formed pursuant to that act, definitely speaks upon the dispute, the parties seem to concede it controlling. The difficulty is to find something directly applying to the facts relating to William Becker: The policy here divides the different occupations of the employes. There is no "governing classification" unless William Becker be placed in the class of bottlers. The manual states:

"All executive officers exposed to the operative hazard of the industry must be covered at the rate of the governing classification at the actual salary," etc.

Then follow exceptions, among which is:

"4. For the purpose of this manual 'executive officers' shall be defined as those officers of a corporation commonly known and styled as 'President, Vice-president, Secretary or Treasurer.' The remuneration of executive officers shall be excluded from the payroll upon which the premium rates are charged unless such executive officers are actually performing such duties as are ordinarily undertaken by a superintendent, foreman, or workman in which case the entire payroll of such officers must be included at the rate applicable to the operations in which such officers are engaged."

The trial court was of the opinion, and we think rightly, that the burden was upon plaintiff to show that William Becker, the manager and president, was engaged to a substantial extent in operative hazards of the business before premium can be recovered on that basis. We cannot hold that the evidence clearly called for the award of a greater amount than that given plaintiff, especially in view of the lack of data in the record upon which to determine rates or to classify William Becker.

The order is affirmed.